**RHIDDLEHOOVER et al. v. BOREN et al.**

No. 6639.

Court of Civil Appeals of Texas. Texarkana.

June 11, 1953.

Rehearing Denied Sept. 3, 1953.

432

E. B. Lewis, N. M. Holt, Carthage, Fred O. Jaye, Center, for appellants.

Long & Strong, Carthage, Lane & Anderson, Center, Sid B. Turner, Ward Chandler, Tom A. Bankhead, Fred Whitaker, Ruff Wall, Carthage, for appellees.

LINCOLN, Justice.

This suit was originally instituted by W. B. Rhiddlehoover and the children of himself and his deceased wife. Upon his death his son J. B. Rhiddlehoover was appointed independent executor of his will without bond; and having qualified, the suit was thereafter maintained by him in his individual right and as independent executor of the estate of his deceased father, and by the heirs at law of W. B. Rhiddlehoover and his deceased wife.

The suit as against S. L. Boren is in trespass to try title for an undivided one-half interest in three tracts of land in Panola County, fully described, containing 163½ acres of the William Miller Survey and 35.46 acres of the John Davlin Survey. The defendant Boren answered by plea of not guilty and general denial, with special answers not necessary now to mention. The parties will be referred to as in the trial court and other facts will be stated as necessary in this opinion.

The suit of plaintiffs was for recovery of the superior title to said land alleged to have been retained by W. B. Rhiddlehoover and wife in a conveyance of an undivided one-half interest therein by general warranty deed dated December 13, 1938, filed for record and recorded in Panola County on October 22, 1943. The conveyance was for a cash consideration of $898.75 paid, "and the further consideration the said Dr. S. L. Boren assumes one-half of all indebtedness due on said land to the Federal Land Bank of Houston, Texas," for which the grantors "have granted, sold and conveyed, and by these presents do grant, sell and convey unto said Dr. S. L. Boren of the county of Panola, State of Texas, all that certain undivided one-half interest in and to" the lands described in plaintiff's petition.

The habendum clause reads as follows:

To Have And To Hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Dr. S. L. Boren, his heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and defend all and singular the said premises unto the said Dr. S. L. Boren, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

Allegations were made by plaintiffs that the defendant Boren had failed to pay one-half of the payments due to the Federal Land Bank since April, 1944, and that in order to protect the land from foreclosure the plaintiffs or their testator W. B. Rhiddlehoover had made such payments. Upon the theory that Boren had breached his promise and agreement to pay one-half of the debt due to the Federal Land Bank as payments became due, the plaintiffs alleged they were entitled to recover the lands by virtue of the superior title reserved in W. B. Rhiddlehoover and his wife, which passed by her death and by their father's will to plaintiffs, and to cancel and annul the deed executed to Boren because the consideration therefor had failed. Foreclosure of lien was not sought. The issues were submitted to the jury, and bearing upon the point now under consideration, special issues Nos. 1 and 2, and the answers of the jury thereto, were as follows:

"1. Do you find from a preponderance of the evidence that since April, 1944, the defendant S. L. Boren has failed to pay one-half of the purchase money indebtedness due on the property in question to the Federal Land Bank of Houston? Answer: 'He has not failed to pay one-half.'

"2. Do you find from a preponderance of the evidence that the semiannual payments of $61.36 to the Federal Land Bank of Houston falling due on and after October 1, 1944, have been paid by some one or more of the plaintiffs in this cause or those through whom they claim? Answer: 'No'."

Prior to the submission to the jury the appellants moved the court for an instructed verdict "based upon the undisputed proof of the assumption by the said S. L.

Boren of one-half of the outstanding indebtedness owing to the Federal Land Bank of Houston," and also basing such motion "upon the undisputed facts which disclosed that after default in paying the one-half of the indebtedness by the defendant S. L. Boren, according to his assumption thereof, which was due and owing to the Federal Land Bank of Houston W. B. Rhiddlehoover took possession thereof and continued in possession under a claim of superior title thereto until the filing of this suit."

After the verdict was returned plaintiffs presented their motion for judgment non obstante veredicto, "based on the undisputed proof that the defendant S. L. Boren had assumed the payment of one-half of the outstanding indebtedness owing against the said land, and thereby created the vendor's lien in favor of the said W. B. Rhiddlehoover to secure the payment thereof."

■ The motions of appellants were overruled and the judgment entered reads in part: "The parties litigant, both the plaintiffs and defendants, having agreed and stipulated in open court that it was their intention by their pleadings to place in litigation only the title which the defendant S. L. Boren and those claiming under him assert in the aforesaid deed from W. B. Rhiddlehoover and wife, Camelia Rhiddlehoover, to S. L. Boren (the deed dated December 13, 1938, and appearing of record * * *) to an undivided one-half interest in the above-described land and premises, and that their pleadings should be construed as being so restricted, it is further ordered, adjudged and decreed by the court that the plaintiffs, each and all of them, take nothing by their suit * * *." The point is thus directly presented that the appellants as plaintiffs below were asserting a superior title to the land conveyed by the deed of December 13, 1938, by reason of the alleged and claimed breach of agreement of Boren contained therein to make his part of the payments due to the Federal Land Bank. In our opinion the verdict of the jury in response to special issues Nos. 1 and 2 find support in the evidence. It appeared that cattle belonging to

Boren, or in which he had an interest, had been sold by the plaintiffs, and royalties or lease money had been collected by them. Boren sought to offset any amount due by him on the land indebtedness paid by the plaintiffs with the amount which the plaintiffs had collected. That seems to have been the foundation in fact for the verdict of the jury and we are not prepared to say that the verdict is without support in the evidence.

■ However, appellants argue strenuously that the verdict was without support in the evidence and that they are entitled to recover the land by virtue of the superior title held by them. It has long been held in Texas "that a vendor under an executory contract for the sale of real property retains the 'superior title', as against the purchaser and those in privity with him, until the contract is executed or performed on the part of the purchaser by paying the purchase money or discharging the debt therefor." 43 Tex.Jur., p. 228, Sec. 140.

■ But the same authority and in the same section says that "A vendor who executes an executory conveyance to the purchaser, and retains no express lien in the deed or otherwise, divests himself of the legal title to the property and his interest thereafter, if any, is equitable. In such circumstances he ordinarily has a mere equitable or implied lien for the unpaid purchase money, although the conveyance recites or shows that the money is unpaid and that a note has been given therefor."

■ The superior title may be conveyed to a third person along with the debt and lien where the assignment expressly so provides, 43 Tex.Jur., p. 298, but the superior title is distinct from the vendor's lien. 43 Tex.Jur., p. 233.

In Robinson v. Smith, Tex.Civ.App., 130 S.W.2d 381, 384, writ refused, Justice Alexander said that "when such vendor afterwards assigns the note or other evidence of the indebtedness, together with the lien securing same, to a third person and does not expressly assign the superior title to the land, his assignee does not acquire the su-

perior title to the property but merely acquires a lien thereon."

After citing authorities, Justice Alexander further said: "For the same reason, we think, when the deed merely retains a lien in favor of the third person to whom the purchase money note is made payable and does not expressly convey to him the superior title, the holder of such note does not have the superior title to the property but he merely holds a lien thereon." The facts and issues in that case were not exactly as those in the present case, but the separate identities of the superior title and the vendor's lien are clearly shown. In Ransom v. Brown, 63 Tex. 188, the court said: "The case presented by the record is that of a sale of land for a consideration paid partly in cash, and the balance secured by promissory notes payable at different dates in the future. These notes recite that they are given for the purchase money of the land, but say nothing about the reservation of a lien for their payment. The conveyance of the land is made by an absolute warranty deed, stating the consideration and the dates at which it is to be paid; but reserving no lien upon the land to secure these deferred payments. No mortgage or other like instrument was executed by which any lien whatever was created upon the land to secure the payment of the unpaid purchase money. The effect of the transaction was to give to the vendor an implied lien upon the land to secure the unpaid portion of the consideration, and to vest absolute title in the vendee."

In Baker v. Compton, 52 Tex. 252, we find the same holding. In Maxfield v. Pure Oil Co., Tex.Civ.App., 62 S.W.2d 259, writ refused, the deed before the court did not expressly reserve the vendor's lien and the notes executed were silent with reference to such lien. It was held that the grantor had only an implied lien upon the land.

■ These and numerous other authorities which might be cited make it necessary to hold in this case that when W. B. Rhiddlehoover and wife made the conveyance on December 13, 1938, to Dr. Boren, the conveyance was absolute, the full legal title was conveyed, and the superior title was not retained.

■ The foregoing holdings seem to be very well summed up in the following statement from 43 Tex.Jur., p. 339, Sec. 196: "When the stipulated purchase price has not been paid, a vendor who has given an absolute conveyance, without retaining an express lien, may sue for the debt and enforce an implied lien upon the property as against the original purchase or a subsequent purchaser or encumbrancer with notice. But he is not entitled to rescind the sale and recover the property."

■ Appellants assert, however, that they are subrogated to the superior legal title held by the Federal Land Bank to the extent of the payments made by them upon default of Dr. Boren. The verdict of the jury precludes our upholding such contention, but if we should be mistaken in holding the evidence sufficient to support the verdict, still we cannot sustain appellants' point in this respect. It seems to be the holding of Texas cases that the superior title does not pass by subrogation. Hatton v. Bodan Lumber Co., 57 Tex.Civ.App. 478, 123 S.W. 163, writ refused; Jordan v. Jordan, Tex.Civ.App., 154 S.W. 359, writ refused; Morgan v. Darlington, Tex.Civ. App., 192 S.W.2d 327, 328. In the last cited case it was said: "By advancing the money to take up and extend the vendor's lien note, Walter Darlington, at most, became subrogated to the vendor's lien held by Lott. Darlington did not, by this transaction, acquire Lott's superior legal title to the land."

It therefore follows that in our opinion the court correctly entered judgment for the defendants upon the points discussed, and appellants' points numbered 1, 2, 5, 6 and 7 are respectfully overruled. It also follows that the court correctly refused to cancel the Boren deed and the deeds of those holding under him for failure of consideration.

The foregoing are the vital issues on this appeal. Other points, mainly of procedure, are presented and which we have considered, but in our opinion none of them present error calling for reversal, and they are overruled.

The judgment of the district court is in all things affirmed.