STATE OF HAWAII, by its Attorney General, GEORGE PAI, Plaintiff-Appellee, *v.* LOWELL WINSTON KWONG WAI THOM, JOYCE K. THOM, Defendants-Appellants, and CITY BANK OF HONOLULU, Defendant

NO. 5814

APRIL 29, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal by Lowell Winston Kwong Wai Thom and Joyce K. Thom, husband and wife (collectively appellants), is from the judgment and findings of fact and conclusions of law of the lower court in a non-jury proceeding entitling the State of Hawaii (hereinafter State or appellee) to specific perfor-

mance to the extent that appellants reexecute a deed. City Bank of Honolulu was joined as a party in the original action by reason of its mortgage on the property in question. The mortgage, however, has been satisfied, and City Bank of Honolulu no longer claims any interest on the property in question.

Judgment affirmed.

### ISSUE

Did the State receive title to the subject property upon delivery of an executed deed by the appellants to the State, notwithstanding that though the contract provided payment of the full purchase price "payable on transfer of fee simple title to the State," the State tendered the required purchase monies approximately ten months after appellants delivered the deed to the State?

### STATEMENT OF THE CASE

The appellants' property was one of fourteen parcels of land and improvements thereon that appellee wished to acquire, either by negotiated purchase or by condemnation, if necessary, for the expansion and improvement of Honolulu Community College situate at Kapalama, Honolulu, Oahu, Hawaii. By letter dated January 20, 1971, appellee, through its agent, Sunao Kido, Chairman, Board of Land and Natural Resources, offered to purchase appellants' property for the sum of $77,375.00. This figure was based on an independent appraisal made by Frank D. Serrao on or about November 30, 1970. The appellee's offer contained the following terms and conditions:

1. The cash purchase shall be $77,375 payable on transfer of fee simple title to the State.

2. Within a reasonable time after acceptance of this offer, you will furnish this office with an abstract Certificate of Title.

3. The State will prepare the deed, and description and make a ground survey of the property at no cost to you.

4. You will not be required to pay the Conveyance Tax.

5. Real Property Taxes will be prorated as of the date of delivery of deed.

6. Closing of the sale shall take place after you have furnished evidence of title satisfactory to the State in accordance with Paragraph 2 hereof.

7. At closing you will deliver to the State a good and sufficient Warranty Deed to the premises free and clear of all encumbrances.

8. In the event the sale is not closed within sixty (60) days from the date of this offer, the agreement to purchase shall be terminated, unless the time to close is extended for an additional period or periods by the State.

9. Should this offer be acceptable to you, please indicate your acceptance by signing the duplicate copy of this letter and return it to this office at the earliest possible date.

The appellants did not accept the appellee's offer of January 20, 1971. However, through their agent, Richard T. F. Lum, a real estate broker, appraiser and notary public, appellants submitted a counteroffer of $85,112.50 on March 22, 1971.

The appellee responded on March 25, 1971, with the same counteroffer of $85,112.50 but incorporated by reference all the terms and conditions specified in their initial letter of offer dated January 20, 1971.

On March 30, 1971, appellants accepted and approved appellee's counteroffer of March 25, 1971, wherein appellee agreed to purchase and appellants agreed to sell all of the subject property for the sum of $85,112.50.

The deed was subsequently drafted and prepared on April 20, 1971, by the appellee and was received by the appellants through Mr. Lum on April 21, 1971. On April 23, 1971,

appellants signed and executed the deed. Mr. Lum notarized the transaction, recorded the execution of the deed by the appellants, and delivered the deed to the State of Hawaii "a short time after it was executed."

It was not until March 9, 1972, that the appellee first tendered its check for $85,112.50 to appellants. However, prior to March 9, 1972, Richard Lum informed Jack Meek, Acquisition Officer, Department of Land and Natural Resources (DLNR), State of Hawaii, that the appellants would not accept appellee's check because it was inadequate and untimely in that it was in violation of term and condition eight (8) of appellee's counteroffer of March 25, 1971, which incorporated by reference the terms and conditions of appellee's original offer dated January 20, 1971. Mr. Meek testified that appellants would "go back and discuss it again." Nevertheless, a meeting was arranged between Mr. Meek, the appellants and Richard Lum in Mr. Meek's office on March 9, 1972. Mr. Meek there attempted to tender the State Warrant for $85,112.50 and asked the appellants to reexecute a deed to appellants' property. The original deed of April 23, 1971, was somehow lost or misplaced after it was delivered to appellee. The appellants did not accept appellee's check nor did. they reexecute a deed to the property at the March 9, 1972, meeting with Jack Meek. However, no express or formal cancellation or rescission of the purchase contract was made by appellants to appellee.

By letter dated May 16, 1972, Andrew S. O. Lee, Deputy Attorney General, attempted to tender payment and have the appellants reexecute a deed. But the appellants again did not accept the check dated February 28, 1972, made payable to them nor did they reexecute a deed to the property for the same reasons as stated above.

The appellee and appellants thereafter entered into an escrow agreement dated October 10, 1972, whereby the State Warrant in the amount of $85,112.50 was deposited into a savings and loan association to earn interest thereon while the parties settled their differences regarding the subject property.

OPINION

The appellants' primary contention is that the trial court erred in its findings of fact that appellants "delivered a deed conveying the subject property to the [appellee], State of Hawaii, on April 23, 1971" because "the alleged delivery of said deed was merely a conditional delivery subject to Appellants receiving payment of the purchase price by the Due Date in accordance with said Paragraph 8" of the letter offer dated March 25, 1971, which incorporated by reference the terms and conditions of appellee's initial letter offer dated January 20, 1971. Appellants do not contest the fact that they executed the deed, nor do they deny that the deed was actually delivered to the State.

However, whether there was an unconditional delivery of the deed to the grantee with the expectation that it would take immediate effect as claimed by the State, or whether a conditional delivery was intended with the expectation that it would not take effect until payment of the purchase price at a later date, does not, under the circumstances of this case, make any difference with the result.

It is stated in 8 Thompson on Real Property, § 4227, pp. 32-35 (1963):

[T]he question of the completed and effectual delivery of a deed is one of intent of the grantor and this intent to irretrievably part with control of the deed is to be gathered from the circumstance under which the delivery was made. This element is controlling. Whether there has been a delivery of the deed is a question of fact rather than of law, depending upon the intent of the grantor to vest an estate in the grantee. Intention is often said to be the essence of delivery. Hence, the true test of delivery of a deed of conveyance is whether or not the grantor intended to reserve to himself the locus poenitentiae.[1]

---

[1] "Locus poenitentiae" is defined in Black's Law Dictionary, 4th Ed. (1968) at page 1090 as ". . . an opportunity for changing one's mind; an opportunity to undo what one has done . . .; a chance to withdraw from a contemplated bargain or contract before it results in a definite contractual liability; a right to withdraw from an incompleted transaction . . . ."

"While a deed should be construed in accordance with the intention of the parties, if at all possible, still such intent must be ascertained from the language of the instrument itself." *Bishop Estate Trustees v. Castle & Cooke,* 45 Haw. 409, 415, 368 P.2d 887, 891 (1962); *Nahaolelua v. Heen,* 20 Haw. 372, 377 (1911).

As we view the deed, we find it absolute and unconditional. The deed recites and acknowledges the receipt of $85,112.50 as consideration. The words "grant, bargain, sell, transfer and deliver unto Grantee" clearly manifest the present intention of the appellants to grant their interest or estate in the lands described in the deed. We find no clauses or conditions in the deed limiting or qualifying the estate conveyed to the State. Nor do we find any express lien retained within the deed. The evidence also shows that the grantor did not reserve any right of control over the deed. The various provisions of the deed are entirely consistent with, and indicative of, a grant of a fee simple title. "[A]n absolute conveyance of land ordinarily means the transfer of an unrestricted or unconditional estate." *Kaleialii v. Sullivan,* 242 F. 446, 452 (9th Cir. 1917).

"As a general rule, a delivery of a deed must be absolute and unconditional, unless it is in escrow." 26 C.J.S. Deeds, § 48, p. 704; *Takacs v. Takacs,* 317 Mich. 72, 26 N.W.2d 712 (1947). However, "delivery of a deed complete on its face to the grantee, as here, is an absolute delivery. . . . The general rule is that the delivery of a deed to a grantee cannot be a delivery in escrow." (Citation omitted) *Wells v. Wells,* 249 Ala. 649, 651, 32 So.2d 697, 698 (1947); *Collins v. Dye,* 94 F.2d 799 (9th Cir. 1938). "[A] delivery in escrow may be made only to a third person[2] not a party to the transaction, and there can be no such delivery to the grantee on a condition not expressed in the instrument. Accordingly, while there is some authority to the contrary, it is generally held that the

---

[2] Appellants cannot and do not contend that Mr. Meek "was a third person not a party to the transaction." It was clear from the onset that Mr. Meek was an agent of the State acting in that capacity during the negotiations for the purchase of the subject property from the appellants.

delivery to the grantee of a deed absolute on its face will pass complete title to him regardless of any condition or contingency on which its operative effect is made to depend . . . ." 26 C.J.S. Deeds, § 48, pp. 704-705; *In re Hume's Estate,* 128 Mt. 223, 272 P.2d 999 (1954); *Takacs v. Takacs, supra; Wells v. Wells,* 252 Ala. 390, 41 So.2d 564 (1949); 6 Powell on Real Property, § 897, pp. 254-256 (1977); 8 Thompson on Real Property, §§ 4234, 4245, pp. 69-78, 143-146 (1963).

In this respect, the court in *Dyer v. Skadan,* 128 Mich. 348, 352-353, 87 N.W. 277, 278 (1901), citing a prior case with approval, stated:

> "It is a well-settled rule of law that, if the grantor does not intend that his deed shall take effect until some condition is performed, or the happening of some future event, he should either keep it himself, or leave it with some person as an escrow to be delivered at the proper time. That it should operate as an escrow, it is necessary that the delivery should be made to a stranger, and not to the party; for, if one makes a deed, and delivers it to the party to whom it is made, as an escrow upon certain conditions, in such case, let the form of the words be whatever it may, the delivery is absolute, and the deed shall take effect presently as his deed, and the party to whom it is delivered is not bound to perform the condition . . . ." (Citations omitted.)

We have examined the evidence and testimony and do not find any circumstances which negate the appellants' intention to presently deliver an absolute deed. *See Morris v. Johnson,* 219 Ga. 81, 93-94, 132 S.E.2d 45, 54 (1963). The fact that the deed was lost or misplaced does not divest the appellee of the title nor revert it in the grantor. 8 Thompson on Real Property § 4241, pp. 120-129 (1963).

Thus, the evidence as it relates to the delivery of the deed, even assuming arguendo that a conditional delivery was intended, as contended by appellants, does not justify cancellation of the deed. *Wells v. Wells, supra* (252 Ala. 390, 41 So.2d 564 (1949)).

Appellants also contend that the "delivery was never actually consummated and good title was never passed because Appellee never made payment." Appellants argue further that "[i]f Appellee expected to receive an unconditional delivery and good title to the Property without proper and timely payment thereon, then their expectation was tantamount to fraud and misrepresentation because it is not in keeping with the letter and intent of the Agreement."

We have reviewed the evidence as to this allegation of fraud and find it without merit. There is no allegation that the consideration recited in the deed was not the agreed upon consideration. Fraud was not alleged in appellants' answer; nor did the trial court find any fraud by appellee or its agents. Without effective allegations of fraud and "under the well established rule that general allegations of fraud raise no issue," we are of the opinion that this allegation provides no basis for the relief sought. *Morris v. Johnson, supra,* 219 Ga. at 87, 132 S.E.2d at 50.

Furthermore, the mere failure to pay the consideration recited in the deed is not ground for annulling the deed. *Norby v. Pister,* 114 Cal. App.2d 510, 250 P.2d 633 (1952); *Conley v. Sharpe,* 58 Cal. App.2d 145, 136 P.2d 376 (1943); *Ah Hoy v. Raymond,* 19 Haw. 568 (1909); *Kanakanui v. Leslie,* 7 Haw. 223, 225 (1888); *Desert Centers, Inc. v. Glen Canyon, Inc.,* 11 Utah 2d 166, 356 P.2d 286 (1960).

As the court in *Harry v. Griffin,* 210 Ga. 133, at 133, 78 S.E.2d 37, 38 (1953), succinctly stated:

> As between the grantor and the grantee, in the absence of fraud, any sum paid or contracted to be paid is sufficient consideration to make a conveyance of realty valid. (Citations omitted.)

Thus, the fact that the State may have failed to perform a promise bargained for under the terms of the contract will not entitle the appellants to rescission where they have executed their part of the contract.

In regards to conveyances executed as to the vendor, the rule is summarized in 77 Am. Jur. 2d Vendor and Purchaser, § 538 at page 710, where it is stated:

The mere failure by a grantee to perform a promise which formed the whole or a part of the consideration inducing an executed conveyance gives rise to no right of rescission in the grantor, either at law or in equity, unless such promise amounts to a condition, and in case the language or intention is doubtful, the promise or obligation of the grantee will be construed to be a covenant, limiting the grantor to an action thereon, and not a condition subsequent with the right to defeat the conveyance. A conveyance of real estate, fully executed on the part of the grantor, cannot be set aside for a failure of consideration, on the sole ground that the promises and agreements which induced its execution, and which by the terms of the contract under which the deed is made were not to be performed until after its execution, have not been performed. Thus, failure to pay the agreed price for a tract of land, or to redeem a promise which constitutes the consideration for the conveyance, furnishes no ground for its cancelation [*sic*].

*See,* 6 Thompson on Real Property § 3120, pp. 920-31 (1962).

In the present case, appellants were divested of their legal title to the property when they executed their part of the contract[3] and retained no express lien in the deed or otherwise. In this respect, the Texas Civil Court of Appeals in *Rhiddlehoover v. Boren,* 260 S.W.2d 431, 433 (Tex. Civ. App. 1953), stated:

". . . a vendor under an executory contract for the sale of real property retains the 'superior title', as against the purchaser and those in privity with him, until the contract is executed or performed on the part of the purchaser by paying the purchase money or discharging the debt therefor." (Citation omitted.) * * *

"A vendor who executes an executory conveyance to the purchaser, and retains no express lien in the deed or

---

[3] *See* Huddle v. Cleveland, 297 S.W.2d 737 at 740-41 (1956) for a discussion of the "distinction between executory contracts, wherein a superior title is reserved, and those in which the contract is executed".

otherwise, divests himself of the legal title to the property and his interest thereafter, if any, is equitable. In such circumstances he ordinarily has a mere equitable or implied lien for the unpaid purchase money, although the conveyance recites or shows that the money is unpaid and that a note has been given therefor.''

The court in *Rhiddlehoover v. Boren, supra,* clearly stated the rule, where at page 434, it is stated:

"When the stipulated purchase price has not been paid, a vendor who has given an absolute conveyance, without retaining an express lien, may sue for the debt and enforce an implied lien upon the property as against the original purchase or a subsequent purchaser or encumbrancer with notice. But he is not entitled to rescind the sale and recover the property.''

We are of the belief that the above doctrines are sound. To hold that a vendor of real property could, upon vendee's failure to pay the purchase price, repudiate his deed and recover the property, would render real estate titles dangerously uncertain with ensuing unfortunate consequences.

We hold that the obligation of the State to make payment as stated in the agreement was in the nature of a covenant,[4] not a condition, and, therefore, appellants may not rely upon the State's failure to perform the covenant to effectuate a rescission of the deed. *See Zapata v. Torres, supra* n. 4.

We have considered and examined other points raised by appellants in support of their argument for rescission of the

---

[4] "Since forfeiture of an estate for breach of a condition subsequent is not favored by the courts, a promise of the grantee will be construed as a covenant rather than as a condition unless a conditional estate is clearly and unequivocally revealed by the language of the instrument, and recitation of the grantee's promise as consideration for the conveyance does not in itself indicate an intention to convey a conditional estate.'' Zapata v. Torres, 464 S.W.2d 926, 929 (Tex. Civ. App. 1971); Ross v. Harding, 64 Wash. 2d 231, 391 P.2d 526 (1964); Lavely v. Nonemaker, 212 Cal. 380, 298 P.976 (1931).

Appellants did not insist upon payment of the purchase price as a prerequisite to the conveyance of the subject property to appellee, and we do not consider it a condition precedent.

deed, and, in light of the foregoing, it is our opinion that none of them present error calling for reversal.

Judgment affirmed.

*Michael David Hong (Flynn & Hong* of counsel) for defendants-appellants.

*Andrew S. O. Lee,* Deputy Attorney General *(Edwin P. Watson,* Deputy Attorney General, on the brief) for plaintiff-appellee.